# EXHIBIT A

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

STATE OF NEW YORK
SUPREME COURT          COUNTY OF OSWEGO

MONICA M. GARNER and PETER H.
GARNER,

                                    Plaintiffs,

              vs.

EXELON GENERATION CORPORATION,
LLC and BLUE CROSS BLUE SHIELD OF
ILLINOIS

                                    Defendants.

Index No.

Plaintiff designates

Oswego County
As the Place of Trial

The Basis of Venue is
Residence of Plaintiffs

**S U M M O N S**

Plaintiffs  reside at
31 Emery Road,
Mexico, NY 13114-3311

County of Otsego

To the above-named Defendants:

              You are hereby summoned to answer the complaint in this action and to serve a copy of your answer; or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within twenty days after the service of this summons, exclusive of the day of service (or within thirty days after the service is complete if this summons is not personally delivered to you within the State of New York);  and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  January 18, 2021

                                    Yours, etc.

                                    ROBERT F. JULIAN, ESQ.
                                    ROBERT F. JULIAN, P.C.

                                            1

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

Attorneys for Plaintiffs
Office & P. O. Address
2037 Genesee Street
Utica, New York 13501
(315) 797-5610

Defendants' Addresses:

- The Defendant, EXELON GENERATION COMPANY, LLC, State of New York

  c/o Corporate Creations Network, Inc., 600 Mamaroneck Avenue, Suite 400,

  Harrison, New York 10528.

- BLUE CROSS BLUE SHIELD OF ILLINOIS ("BLUE CROSS"), 300 East

  Randolph Street, Chicago, Illinois 60601-5099.

2

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

STATE OF NEW YORK
SUPREME COURT COUNTY OF OSWEGO
===================================

MONICA M. GARNER and PETER H.
GARNER, Individually

                Plaintiffs,

                                        COMPLAINT

-against-

EXELON GENERATION CORPORATION,
LLC and BLUE CROSS BLUE SHIELD OF
ILLINOIS

                Defendants
===================================

      The Plaintiffs, Individually, by and through their attorney, Robert F. Julian, P.C. for their

complaint to the Defendants herein, hereby allege as follows:

### THE PARTIES

1.   The Plaintiff, MONICA M. GARNER ("PLAINTIFF"), currently resides in the State of

    New York, County of Oswego, at 31 Emery Road, Mexico, New York 13114-3311.

2.   The Plaintiff, PETER H. GARNER ("PLAINTIFF"), currently resides in the State of

    New York, County of Oswego, at 31 Emery Road, Mexico, New York 13114-3311.

3.   The Defendant, EXELON GENERATION COMPANY, LLC, is headquartered in the

    State of Illinois and incorporated in the State of Pennsylvania.  Correspondence in the

    State of New York is listed as State of New York c/o Corporate Creations Network, Inc.,

    600 Mamaroneck Avenue, Suite 400, Harrison, New York 10528.

1

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

4.  The Defendant, BLUE CROSS BLUE SHIELD OF ILLINOIS ("BLUE CROSS"), is a health insurance corporation that conducts business in the State of New York, County of Oswego by selling health insurance policies to the Exelon Generation Company, LLC and its employees. BLUE CROSS lists its corporation address as Blue Cross and Blue Shield of Illinois, 300 East Randolph Street, Chicago, Illinois 60601-5099.

## JURISDICTION

5.  Jurisdiction is proper in the State of New York Supreme Court, County of Oswego as PLAINTIFFS are domiciled in the Town of Mexico, County of Oswego, State of New York. Both named defendants regularly conduct business in the State of New York.

6.  The amount in controversy exceeds the limits of all lower courts in the State of New York.

## FACTS

7.  The Defendant, EXELON GENERATION COMPANY, LLC, is a Fortune 150 company that works in every stage of the energy business, including power generation, competitive energy sales, transmission, and delivery. Exelon Generation Company, LLC regularly conducts business through its many facilities in the County of Oswego, State of New York including: the Nine Mile Point Nuclear Station in the Town of Scriba, Nuclear Nine Mile Point in Oswego, New York, James A. FitzPatrick Nuclear Power Plant in Oswego, NY and the R.E. Ginna in Ontario, New York. DEFENDANT EXELON individually or in concert with other Exelon Entities, have been one of the major largest employers of Oswego County residents for the past 40 years. DEFENDANT EXELON has over 600 employees in its Oswego County Facilities.

2

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

8. DEFENDANT EXELON has two primary business units: Exelon Nuclear and Exelon Power. Exelon Nuclear operates America's largest fleet of nuclear power plants. The Exelon nuclear fleet is a powerhouse, producing approximately 158 million megawatt-hours of electricity every year. Exelon Power is responsible for managing, operating, and maintaining the company's fleet of natural gas, hydroelectric, wind, solar, landfill gas and oil assets. Exelon Power provides more than 12,400 megawatts of safe, efficient, environmentally responsible base load, intermediate and peak power generation. Exelon Corporation is an American Fortune 100 Energy Company headquartered in Chicago, Illinois and incorporated in the State of Pennsylvania. It generates revenues of approximately $33.5 billion and employs approximately 33,400 people nationwide and as previously stated 600 are in Oswego County. Exelon was created in October 2000 by the merger of PECO Energy Company of Philadelphia and Unicom Corporation of Chicago, which owned Commonwealth Edison. In October 2009, Exelon had full or majority ownership of 23 nuclear reactors in 14 nuclear power plants, including the James A FitzPatrick Nuclear Power Plant in Oswego County, which was purchased in August 2016. Exelon merged with Constellation Energy Group in March 2012 and acquired Pepco Holdings in March 2016.

9. PLAINTIFF PETER H. GARNER retired from Exelon Generation Corporation, LLC on June 1, 2018 after 36 years of service to the Corporation. At the time of his retirement, PLAINTIFF PETER H. GARNER, whose date of birth is December 6, 1961 was 58 years of age. PLAINTIFF PETER H. GARNER'S position at the time of his retirement was the Maintenance Manager.

3

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

10. PLAINTIFF PETER H. GARNER initially started as an employee of the Niagara Mohawk Corporation in the County of Oswego, State of New York, which was subsequently acquired by the National Grid Corporation. Ultimately the National Grid Corporation was acquired by Constellation Energy Group. Constellation Energy Group merged with DEFENDANT EXELON in March 2011. Each time a corporate entity either merged or was acquired by another corporate entity, employees were granted a continuance of their employment tenure including retirement pensions and the option of continuing their existing health insurance coverage, albeit at a higher co-pay.

11. PLAINTIFF MONICA M. GARNER is the spouse of PLAINTIFF PETER H. GARNER. PLAINTIFF MONICA M. GARNER'S date of birth is XXXXXXX, 1962, making her 57 years of age at the time of PLAINTIFF PETER H. GARNER'S retirement. Both PLAINTIFFS are life-long residents of the County of Oswego and plan on remaining in the County during their retirement years.

12. PLAINTIFF MONICA M. GARNER was an employee of Niagara Mohawk Corporation from approximately 1991 through 1994, prior to its acquisition by National Grid. PLAINTIFF MONICA M. GARNER was employed in the Human Resources Department of Niagara Mohawk Corporation in Oswego County. PLAINTIFF MONICA M. GARNER suffered severe physical and mental health issues necessitating her to leave her position on long term disability in late 1994. On June 1, 1995, PLAINTIFF MONICA M. GARNER was placed on permanent disability due to major health issues and placed on Social Security Disability Insurance (SSDI). PLAINTIFF MONICA M. GARNER continues to receive SSDI benefits. She was also enrolled in Medicare Part A in 1995, unbeknownst to her or PLAINTIFF PETER H. GARNER. PLAINTIFF

4

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

MONICA M. GARNER has never used any Medicare Benefits for health care issues and was unaware that she had Medicare Part A Benefits.

13. Throughout his 36 years of employment at Niagara Mohawk Corporation, National Grid, Constellation Energy and ultimately DEFENDANT EXELON, PLAINTIFF PETER H. GARNER enrolled in a comprehensive corporate subsidized health insurance plan for himself, his wife, PLAINTIFF MONICA M. GARNER and his two children, born on February 17, 1989 and April 28, 1993.   PLAINTIFFS relied on coverage through the Family PPO Plan for health care benefits for the entire time PLAINTIFF PETER H. GARNER was employed by DEFENDANT EXELON.

14. During PLAINTIFF PETER H. GARNER'S employment with DEFENDANT EXELON and while a Family PPO Plan Participant, PLAINTIFF MONICA M. GARNER utilized the health plan for many major medical conditions and procedures.  Due to her mother's history of breast cancer, PLAINTIFF MONICA M. GARNER had genetic counseling as well as BRCA testing in the mid-1990s.  After discovering that she was positive for the BRCA-2 mutation, she underwent bilateral mastectomies and bilateral oophorectomies for risk reduction, covered by the Family PPO Plan.  The Family PPO Plan also provided coverage for all health care maintenance, sick care as well as urgent care visits.  Thus, from 1995 at which time DEFENDANT MONICA M. GARNER began receiving SSDI until PLAINTIFF PETER H. GARNER'S retirement from Defendant EXELON on June 1, 2018, the Family PPO Plan covered all of PLAINTIFF MONICA M. GARNER'S health care expenses.

5

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

15. Prior to PLAINTIFF PETER H. GARNER'S retirement from DEFENDANT ELELON, PLAINTIFF was sent an information packet containing information on the "Comprehensive Retiree Benefits Program." The information packet gave the various options for Health Insurance Enrollment. The information contained in the "Comprehensive Retiree Benefits Program" package informed PLAINTIFFS and was subsequently orally confirmed by DEFENDANT EXELON Human Resources Personnel, that PLAINTIFFS could continue the same health care coverage through a Retirement Family PPO Plan. PLAINTIFFS were informed that as a retirement benefit, they could convert their Family PPO Plan into a Retirement Family PPO plan, with exactly the same coverages for a higher premium co-pay.

16. PLAINTIFFS elected to maintain this coverage by opting for the Retirement Family PPO Plan and immediately commenced paying the monthly premium payments after PLAINTIFF PETER H. GARNER'S retirement on June 1, 2018.

17. PLAINTIFFS were issued a Family PPO Membership Card containing the names of enrolled family members including PLAINTIFF PETER H. GARNER, PLAINTIFF MONICA M. GARNER and their son Hayden Garner upon PLAINTIFF PETER H. GARNER'S retirement from DEFENDANT EXELON.

18. PLAINTIFFS were issued an updated membership card indicating that their son Hayden Garner's Family PPO Plan health care benefits were terminated when he reached age 26 on May 1, 2019. This updated membership card indicated that both PLAINTIFFS were active Family PPO Plan Enrollees.

6

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

19. In the "Comprehensive Retiree Benefit Plan" Packet provided by Human Resources at DEFENDANT EXELON it is clearly stated that "Retirees and dependents who are post-65 and eligible for Medicare (generally Medicare becomes effective the first of the month in which you turn 65) will no longer be eligible for coverage through the Exelon medical (including prescription drug coverage) and vision plans, as applicable."

20. The "Comprehensive Retiree Benefit Plan" packet" provided by DEFENDANT EXELON'S Human Resources does not give any additional circumstances, whereby a retiree or family member of a retiree, who was provided health care coverage under an Employee Family PPO Plan, would no longer be eligible for health care benefits under a Retirement Family PPO Plan. DEFENDANT EXELON'S Human Resources Personnel never mentioned orally any other exclusions for coverage other than as written in the "Comprehensive Retiree Benefits Program" Packet.

21. The Comprehensive Retiree Benefits Program further states that "Under the current design, Exelon will continue to provide coverage to retirees and dependents who are under 65 until they reach age 65 and become eligible for Medicare." There is no other written documentation contained in the "Comprehensive Retiree Benefits Program" Packet, nor was any other information communicated orally to PLAINTIFFS regarding exclusionary criteria for Retirement Family PPO Plan Health Care Benefits.

22. Thus, PLAINTIFFS relied upon the information contained in the "Comprehensive Retiree Benefits Program" Packet as well as through oral communications with DEFENDANT EXELON Human Resources Personal that their health care benefits would continue, unchanged from those under the Employment Family PPO Plan.

7

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

PLAINTIFFS were informed that once they reached the age of 65, Medicare would be their primary insurer and not the Family PPO Plan Benefits. Since both PLAINTIFFS were several years younger than the 65-year-old cut-off, there was no reason for either PLAINTIFF to expect anything other than complete health care benefit coverage under the Retirement Family PPO Plan.

23. After PLAINTIFF PETER H. GARNER'S retirement from DEFENDANT EXELON on June 1, 2018, the PLAINTIFFS relied upon the Retirement Family PPO Plan to continue to provide for all healthcare issues for PLAINTIFF MONICA M. GARNER. At no time was informed that the Retirement Family PPO Plan would no longer serve as her primary health insurer.

24. In March 2019, approximately 11 months after PLAINTIFF PETER H. GARNER'S retirement from DEFENDANT EXELON, and after paying monthly retiree premiums for Family PPO Plan Coverage, PLAINTIFF MONICA M. GARNER began to experience some severe health complications.

25. On March 24, 2019, she presented to the North Medical Urgent Care Center in Liverpool, New York and was evaluated by Alyssa Steckel, PA. At that time imaging studies revealed a large right lower lobe lung mass.

26. PLAINTIFF MONICA M. GARNER was initially referred to her primary care provider, Bruce Silverstein, M.D. in Liverpool, New York. Ultimately, she was referred to St. Joseph's Hospital Healthcare where a biopsy of the right lower lobe lung mass was

8

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

performed by an interventional radiologist.  Biopsy results revealed that PLAINTIFF MONICA M. GARNER had follicular lymphoma.

27. On April 18, 2019, PLAINTIFF MONICA M. GARNER was seen and evaluated by Dorothy Pan, M.D., a physician duly licensed to practice medicine in the State of New York and a specialist in medical hematology and oncology at Upstate University Hospital.  Dr. Pan ordered the PLAINTIFF to have a PET Scan at Radiology Associates at Upstate University Hospital on April 22, 2019.  Results of PLAINTIFF MONICA M. GARNER'S PET Scan revealed a malignant lesion in the right lower lung lobe and did not identify any local or distant metastases.

28. On March 29, 2019, PLAINTIFF PETER H. GARNER called Human Resources at DEFENDANT EXELON and informed them of his wife's diagnosis. He was reassured by Human Resources personnel that his Retirement Family PPO Plan would cover his wife's care.

29. PLAINTIFF PETER H. GARNER subsequently called the Customer Care Line of DEFENDANT BLUE CROSS and Blue Shield of Illinois and explained that his wife, a Family PPO Plan Member, was being worked up for a right lower lung mass, presumed to be neoplastic and asked if this plain would cover PLAINTIFF MONICA M. GARNER'S care at the Wilmot Cancer Center at the University of Rochester Medical Center in Rochester, New York.  PLAINTIFF PETER H. GARNER made this call preemptively and under no obligation by his Family PPO Plan to obtain permission for these services.  PLAINTIFF PETER H. GARNER then relayed these oral reassurances of from DEFENDANT BLUE CROSS and Blue Shield of Illinois that his Family PPO

9

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

Healthcare Coverage would provide coverage for PLAINTIFF MONICA M'

GARNER'S cancer care at the Wilmot Cancer Center at the University of Rochester.

PLAINTIFFS then communicated this information to the Wilmott Cancer Center.  Both

the Wilmot Cancer Center and the University of Rochester Medical Center relied on both

PLAINTIFF PETER H. GARNER'S oral communication guaranteeing Family PPO

Health Care Coverage as well as the contractual language contained in the Retirement

Family PPO Plan Documents.

30. PLAINTIFF MONICA M. GARNER subsequently had consultations with Carla Casullo,

M.D. and Jonathan Friedberg, M.D., both physicians duly licensed to practice medicine

in the State of New York and board-certified medical hematology oncology specialist

physician at the Wilmott Cancer Center. Dr. Casullo recommended that PLAINTIFF go

for an additional opinion at Massachusetts General Hospital in Boston, Massachusetts

due to the specific follicular cell type of her neoplasm.  Both Dr. Casullo and Dr.

Friedberg told PLAINTIFF MONICA M. GARNER that they needed confirmation of her

histopathological diagnosis to provide targeted therapy for her follicular lymphoma.

PLAINTIFF was informed that the world's experts for lymphoma cytopathology were in

the Department of Medicine, Division of Hematology and Oncology of the Massachusetts

General Hospital of Harvard Medical School in Boston, MA.  At Massachusetts General

Hospital, PLAINTIFF MONICA M. GARNER was confirmed to have follicular

lymphoma and marginal zone lymphoma.

31. PLAINTIFF PETER H. GARNER again preemptively called Human Resources

personnel at DEFENDANT EXELON and the Customer Care Line of DEFENDANT

10

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

BLUE CROSS and Blue Shield of Illinois and explained that Dr. Casullo had

recommended that PLAINTIFF MONICA M. GARNER get another opinion at

Massachusetts General Hospital in Boston, MA, PLAINTIFFS were again reassured that

the Retirement Family PPO Plan would cover these services. PLAINTIFFS informed

personnel at Massachusetts General Hospital that their healthcare services were covered

by under their Retirement Family PPO Plan.

32. On May 30, 2019, PLAINTIFF MONICA M. GARNER was seen and evaluated at the

Massachusetts General Hospital in Boston, MA. Massachusetts General Hospital relied

upon PLAINTIFF'S oral communications of Family PPO Health Care Benefits as well as

written contract language in PLAINTIFFS' Retirement Family PPO Plan issued through

DEFENDANT BLUE CROSS to provide consultation services to the PLAINTIFF.

33. On May 15, 2019, PLAINTIFF MONICA M. GARNER started chemotherapy treatments

at the Wilmot Cancer Center at the University of Rochester Medical Center in Rochester,

New York. The chemotherapy regimen included intravenous Ritocin, known under its

brand name Truxima ® (Rituximab) and bendamustine also known under its brand name

of Bendeka ® for two days monthly for six months.

34. In July 2019, PLAINTIFFS reviewed their health insurance statements from Blue Cross

and Blue Shield of Illinois. PLAINTIFFS were concerned that no payments had been

made by their insurer, DEFENDANT BLUE CROSS for services rendered at the Wilmot

Cancer Center at the University of Rochester Medical Center nor for services rendered at

Massachusetts General Hospital. Additionally, PLAINTIFFS realized that healthcare

services presumed to be covered under their Family PPO Health Care Plan Benefits were

11

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

also not being paid for services rendered at Upstate University Hospital and St. Joseph's

Hospital as well as at individual urgent care centers.  Additionally, routine preventive

health care services with the PLAINTIFF'S primary care providers were being denied by

DEFENDANT BLUE CROSS and Blue Shield of Illinois as well.

35.  PLAINTIFF PETER H. GARNER again called Human Resources at DEFENDANT

EXELON where Human Resource Personnel directed him to call DEFENDANT BLUE

CROSS.  PLAINTIFFS were reassured by Human Resources personnel at DEFENDANT

EXELON that their Retirement Family Plan PPO would cover all of PLAINTIFF

MONICA M. GARNER'S services and directed him to inform DEFENDANT BLUE

CROSS and Blue Shield of Illinois that payments were not being made.

36. PLAINTIFF PETER H. GARNER subsequently called DEFENDANT BLUE CROSS

and inquired why payments were not being made.  After many calls to the insurer,

PLAINTIFF PETER H. GARNER was told that the insurer needed the document from

SSDI stating the reason why PLAINTIFF MONICA M. GARNER was denied Medicare

Part B.  PLAINTIFF was then  told that DEFENDANT BLUE CROSS would only pay

20% of the medical expenses since PLAINTIFF MONICA should have enrolled in a

Medicare Part B coverage plan.

37. Many oral communications via telephone were exchanged between the PLAINTIFFS and

DEFENDANT EXELON Human Resources personnel and between the PLAINTIFFS

and DEFENDANT BLUE CROSS and Blue Shield of Illinois Representatives.  On

several occasions, PLAINTIFFS were informed by DEFENDANT EXELON Human

Resources Personnel that DEFENDANT BLUE CROSS had "dropped the ball" in failing

12

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

to provide PLAINTIFFS healthcare benefits under their Retirement Family PPO Plan.
On many other occasions, PLAINTIFFS were informed by DEFENDANT BLUE
CROSS Personnel that the proverbial "ball" was dropped by DEFENDANT EXELON
Human Resources personnel.  Never was there a concerted effort amongst both
DEFENDANTS to enter a three-way conversation with the PLAINITFFS to discuss the
healthcare coverage quagmire the PLAINTIFFS were experiencing. At no point did both
DEFENDANTS inform PLAINTIFFS that a mutual mistake of law was made by both
DEFENDANTS.  Instead, PLAINTIFFS were placed into months of uncertainty, caught
between personnel from both DEFENDANTS, with no definitive answers.  Explanations
from the two corporate giants that the PLAINTIFFS had relied upon for healthcare
coverage was conspicuously absent.  PLAINTIFFS were paying for a Retirement Family
PPO Plan that they relied upon, only to be abandoned.

38. Ultimately, DEFENDANT BLUE CROSS and Blue Shield of Illinois informed
PLAINTIFF PETER H. GARNER that PLAINTIFF MONICA M. GARNER was
"negligent" in failing to obtain Medicare Part B and cited her failure as the reason that the
Retirement Family PPO Plan was denying coverage.  PLAINTIFF PETER H. GARNER
was shocked since Human Resources Personnel from DEFENDANT EXELON had
informed him, in writing and orally,  at the time of his retirement and again upon further
preemptive inquiries, that PLAINTIFF MONICA M. GARNER'S cancer treatments were
covered by the Retirement Family PPO Plan.

39. PLAINTIFFS immediately sent a letter to Blue Cross and Blue Shield of Illinois on
September 24, 2019, appealing DEFENDANT BLUE CROSS and Blue Shield of

13

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

Illinois' refusal of coverage under the Retirement Family PPO Plan. This letter was labeled as an "urgent appeal."

40. On October 11, 2019, PLAINTIFFS received a letter from DEFENDANT EXELON labeled "Second Request" stating "We're [Exelon] conducting a review of retirees and dependents under age 65 who are covered under Exelon's group health insurance. Allsup has been retained by Exelon to determine if you could benefit from assistance in enrolling in Medicare or understanding how Medicare works with your group health insurance. Allsup is a nationwide provider of Social Security disability representation and Medicare services. Of note, this was the first notice PLAINTIFFS received with this information, hence the notation of "Second Request" is erroneous. The letter further states "after receiving your completed questionnaire, Allsup will assess your coverage benefit entitlement." The letter gives three possibilities:

   a. "If you're receiving SSDI, Allsup will assess your Medicare entitlement and establish Medicare as primary payer for your medical claims. Allsup can also assist those who have not maintained their Part B coverage for this service."

   b. "If you have a disability but are not currently receiving SSDI, Allsup may be able to assist you in filing for these benefits, which can provide significant advantages for you and your family. There is a fee for this service only if Allsup is able to obtain your SSDI benefits."

   c. "If you don't have a disability, no additional action is required. Simply notate and return this questionnaire. If you become disabled prior to your 65th birthday,

14

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

please contact Allsup for possible assistance with your application for SSDI

benefits."

41.   PLAINTIFFS were perplexed as to why they were receiving this notice from Allsups

since they were relying on healthcare coverage from their Retirement Family PPO Plan.

PLAINTIFFS were further perplexed if this notice was applicable to PLAINTIFF

MONICA M. GARNER'S coverage, why was it dated October 11, 2019 when

PLAINTIFF PETER H. GARNER retired on June 1, 2018.  Thus, if this notice was in

fact applicable to PLAINTIFFF MONICA M. GARNER'S coverage, why was

DEFENDANT BLUE CROSS and Blue Shield of Illinois collecting premium co-

payments from PLAINTIFFS when in fact the Retirement Family PPO Plan was not

providing DEFENDANT MONICA M. GARNER coverage.  The PLAINTIFFS returned

the questionnaire to Allsups immediately.

42.  The PLAINTIFFS persisted in their plight to secure healthcare coverage from the

Retirement Family PPO Plan that they were paying for and from which they were relying

on from DEFENDANT BLUE CROSS and Blue Shield of Illinois.  Multiply inquiries

were made by the PLAINTIFFS as to the status of this appeal.  Subsequently, the

PLAINTIFFS were informed on October 21, 2019, that the "urgent appeal" letter was not

received by DEFENDANT BLUE CROSS and Blue Shield of Illinois.

43.  PLAINTIFFS immediately sent another "urgent appeal" letter on October 21, 2019 to

DEFENDANT BLUE CROSS and Blue Shield of Illinois.

44.  PLAINTIFFS persisted in calling the Customer Care Desk at DEFENDANT BLUE

CROSS and Blue Shield of Illinois regarding the status of their appeal.  On October 25,

15

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

2019, PLAINTIFFS called DEFENDANT BLUE CROSS and Blue Shield of Illinois and representative Alexa stated that their appeal could not be expedited and that a decision could take up to 60 days.

45. On December 18, 2019, PLAINTIFFS were informed by DEFENDANT EXELON that representatives from both DEFENDANTS that the matter was being "looked into."

46. Several more calls were placed and documented by PLAINTIFFS to personnel at both DEFENDANTS.  Each time PLAINTIFFS called the Customer Service Line of DEFENDANT BLUE CROSS and Blue Shield of Illinois, representatives required them to "start from the beginning" regarding their situation as no notes were available for their review.

47. PLAINTIFFS documented over 20 calls regarding the status of their "urgent appeal" letter as follows:

   a. On January 8, 2020:  PLAINTIFFS were informed that a "ticket" was opened regarding their appeal (Ticket ID: #HGH08012040009).

   b. On January 10, 2020, PLAINTIFFS were informed that representatives were "looking for assistance from the Human Resources Corporate Team and that the insurer was escalating their appeal for assistance.

   c. On January 16, 2020, PLAINTIFFS were informed that representatives were "still working on their case with upper management."

   d. On February 5, 2020, PLAINTIFFS called representative Gena for an update.

16

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

e. On February 14, 2020: PLAINTIFFS were unable to get through on the Customer Service Line. PLAINTIFFS perusal of the Client Portal appeared to show that their case was labeled as "Closed."

f. On February 21, 2020: PLAINTIFFS spoke with representative Quiana and informed her of their plight. Representative Quiana opened a new ticket and stated that she was unaware of any prior appeal regarding their denial of coverage.

g. On March 2, 2020, PLAINTIFFS again spoke with representative Quiana. Representative Quiana informed PLAINTIFFS that the "case is with Exelon Management" and that they [PLAINTIFFS] would get a return call within 5 working days.

h. On March 5, 2020, PLAINTIFFS were called by representative Gena who asked for additional information, informing PLAINTIFFS that she would "add it to the ticket and call them back soon."

i. ON March 13, 2020, PLAINTIFFS called and were informed that the "ticket is still open." The representative was informed that Exelon Management sent information to the insurer and that this information was being evaluated. Representative Quiana informed PLAINTIFFS that their case was "with the Internal Team of Exelon." PLAINTIFFS were informed that they would receive a follow up call within 5 days.

j. On March 19, 2020, PLAINTIFFS called DEFENDANT BLUE CROSS and Blue Shield of Illinois and were told that their "ticket was still open, and more time was needed for resolution."

17

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

k.  On April 2, 2020, PLAINTIFFS called DEFENDANT BLUE CROSS and Blue
Shield of Illinois and again spoke with representative Quiana.  Representative
Quiana informed PLAINTIFFS that their case was "still pending with the Exelon
Plan Management" and that they could expect follow up within 5 days.

l.  On April 9, 2020, PLAINTIFFS called the Customer Service Line and again
spoke with representative Quiana.  Representative Quiana stated that she had
reached out to Allsups and that PLAINTIFFS should call her back with all their
outstanding medical bills from all care givers so that Medicare could make
appropriate disbursements.

m.  On April 10, 2020, PLAINTIFFS called DEFENDANT BLUE CROSS and gave
a total amount for $226,724,41 to representative Quiana as the outstanding
balance due to the Wilmott Cancer Center at the University of Rochester Medical
Center.

n.  On April 17, 2020, PLAINTIFFS again called the Customer Service Desk and
spoke with representative Quiana.  Representative Quiana confirmed that she had
received all the documentation requested and that "Exelon is working on
approval."

o.  On April 27, 2020, PLAINTIFFS called the Customer Service Desk and spoke
with representative Quiana.  Representative Qiana informed plaintiffs that
"Exelon is still working on their ticket" and that she [Quiana] was not an
employee of DEFENANT BLUE CROSS and Blue Shield of Illinois, but an
employee of a third party.  Thus, PLAINTIFFS realized several months into the
grievance process that their appeal was being coordinated by members of a third-

18

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

party vendor, and not Human Resources personnel who were employed by
DEFENDANT EXELON or DEFENDANT BLUE CROSS and Blue Shield of
Illinois.

p.  On May 1, 2020, PLAINTIFFS again called the Customer Service Desk and
spoke with representative Quiana.  Representative Quiana informed PLAINTIFFS
that their ticket was "still being worked on."

q.  ON May 8, 2020, PLAINTIFFS again called and spoke with representative.
Representative Quiana informed PLAINTIFFS that they were "still following up"
and that DEFENDANT BLUE CROSS and Blue Shield of Illinois and
DEFENDANT EXELON were negotiating her claims.

r.  On May 9, 2020 PLAINTIFFS received a "notice of change in benefits from
Social Security" by U.S. Mail.

s.  On May 11, 2020: PLAINTIFFS received a letter from Allsups stating that
PLAINTIFF MONICA M. GARNER'S "Part B [Medicare] was pending."

t.  On May 11, 2020, PLAINTIFF MONICA M. GARNER, upon the
recommendations of Allsups personal, applied for retroactive coverage from
Medicare.  PLAINTIFFS were informed that "retroactive coverage" would only
coverage 6 months of retroactive services.

u.  On May 19, 2020, PLAINTIFFS again called the Customer Service Desk and
spoke with representative Quiana.  Representative Quiana informed PLAINTIFFS
that there was "no information yet" and that they were "still working on it."

19

**FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM**
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

    v.  On May 21, 2020:  PLAINTIFFS called DEFENDANT EXELON and disclosed PLAINTIFF MONICA M. GARNER'S Medicare number and Part "B" effective coverage data requested by representative Quiana.

    w.  On May 26, 2020, PLAINTIFFS found a denial of coverage letter in PLAINTIFF MONICA M. GARNER'S BLUE CROSS AND BLUE SHIELD of Illinois Portal.

    x.  On June 5, 2020, PLAINTIFFS called DEFENDANT EXELON and spoke with representative Quiana.  Representative Quiana informed the PLAINTIFFS that the "ticket is still open and working" contrary to the information contained in the Portal.

    y.  On June 12, 2020, PLAINTIFFS called DEFENDANT EXELON and were informed by Quiana that their "ticket was still open and being worked on."

    z.  On June 22, 2020, PLAINTIFFS called DEFENDANT EXELON and spoke with representative Quiana.  Representative Quiana informed the PLAINTIFFS that everything from Allsups was received and that it was being "processed with Medicare Part B."  PLAINTIFFS were informed that they would receive information in the mail "shortly."

    aa. On June 24, 2020, PLAINTIFFS called DEFENDANT EXELON and spoke with representative Quiana.  Representative Quiana informed the PLAINTIFFS that the "case we have open is now closed."  Representative Quiana informed PLAINTIFFS that they could "call us if you have question."

48. PLAINTIFFS, through their Attorney David E. Seubert, M.D., J.D. attempted to resolve their coverage issues in consultation with their State Assemblyman, Will Barclay.

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

Assemblyman Barclay arranged for a conference call with State Representatives Megan Fleming and Stephanie Herrick.  On September 21, 2020, Assemblyman Barclay wrote a letter to the New York State Department of Financial Services.

49. The New York State Department of Financial Services informed PLAINTIFFS, through their Attorney, that they were unable to provide assistance since both DEFENDANTS EXELON and BLUE CROSS and BLUE SHIELF OF ILLINOIS were foreign corporations.

50. All attempts to resolve their coverage disputes with both DEFENDANTS as well as to mitigate the total amount due to the Wilmot Cancer Center at the University of Rochester Medical Center have not been successful.  Accordingly, PLAINTIFFS are filing this Complaint.

## ALLEGATIONS

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDENTS EXELON AND BLUE CROSS, NEGLIGENCE IN FAILING TO INFORM PLAINTIFFS OF THEIR DESIGNATED RIGHTS AS A HEALTH INSURANCE CONSUMER IN VIOLATION OF ISC § 3217-a and PHB § 4408, THE PLAINTIFFS HEREBY ALLEGE:

51.  Under New York State Law, an insured has designated rights as a Health Insurance Consumer including the right to receive important information about the insured's coverage and the right to be protected for surprise bills.

52. Both ISC § 3217-a and PHB § 4408 state that:

(1) "Each subscriber, and upon request each prospective subscriber prior to enrollment, shall be supplied with written disclosure information which may be incorporated into the member handbook or the subscriber contract or certificate containing at least the information set for the below.  In the event of any inconsistency between any separate written disclosure statement and the subscriber contract or certificate, the terms of the

21

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

subscriber contract or certificate shall be controlling.  The information to be disclosed shall include at least the following:

(a) A description of coverage provisions; health care benefits; benefit maximums, including benefit limitations; and exclusions of coverage, including the definition of medical necessity used in determining whether benefits will be covered."

53. DEFENDANT EXELON was negligent in failing to inform PLAINTIFFS of a "description of coverage provisions," specifically benefit limitations and exclusions of coverage.

54. DEFENDANT EXELON'S retirement plan documents state that "Retirees and dependents who are post-65 and eligible for Medicare (generally Medicare becomes effective the first of the month in which you turn 65) will no longer be eligible for coverage through the Exelon medical (including prescription drug coverage) and vision plans, as applicable."  Additionally, the retirement plan documents state that "Under the current design, Exelon will continue to provide coverage to retirees and dependents who are under 65 until they reach age 65 and become eligible for Medicare."  According, since both PLAINTIFFS were well under the age of 65, they relied upon the Retirement Family PPO Plan for coverage and were paying monthly premiums.

55. However, DEFENDANT EXELON failed to provide a comprehensive list of other former health plan members who would be precluded from coverage due to Medicare Rules.  PLAINTIFFS were never informed by either DEFENDANT that "Medicare rules do not allow for individual employee plan family members to retain primary coverage using the retiree family PPO plan when the member is permanently disabled and is receiving SSDI.  Medicare Rules require members receiving SSDI and have a Medicare

22

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

Part A plan, to apply for primary health care coverage under a Medicare Plan B Benefit Plain."

56. PLAINTIFFS were not informed at the time of PLAINTIFF PETER H. GARNER'S retirement on June 1, 2018 of this exclusionary Medicare rule. The failure of both DEFENDENTS to alert the PLAINTIFFS that PLAINTIFF MONICA M. GARNER would not continue to have coverage under the family PPO Plan that they relied up resulted in a deluge of enormous number of "surprise bills."

57. DEFENDANT EXELON'S "Comprehensive Retiree Plan Benefits" Packet failed to provide PLAINTIFFS with essential information regarding the coverage change when their employee benefit Family PPO Plan was converted into a Retirement Family PPO Plan.    DEFENDANT EXELON'S negligence in failing to provide preemptive notice to PLAINTIFFS prior to PLAINTIFF PETER H. GARNER'S retirement from DEFENDANT EXELON on June 1, 2018, caused PLAINTIFFS to detrimentally rely on non-existent coverage from the Retirement Family PPO Plan.  Since the PLAINTIFFS were led to believe they had coverage, and paid premiums for coverage, they were again caught by "surprise" when informed that PLAINTIFF MONICA M. GARNER needed to enroll in a Part B Medicare Plan.

58. Likewise, DEFENDANT BLUE CROSS' Family PPO Contract available to the PLAINTFFS, did not disclose this Medicare rule.  Since both PLAINTIFFS were less than 65 years of age, with PLAINTIFF MONICA M. GARNER being only 56 years of age at the time of PLAINTIFF PETER H. GARNER'S retirement, the PLAINTIFFS relied to their detriment on the Plan Benefits for coverage.

23

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

59. Further complicating the PLAINTIFFS understanding of their coverage are PLAINTIFF

PETER H. GARNER'S preemptive inquiries with both DEFENDANT EXELON Human

Resources and DEFENDANT BLUE CROSS'S Customer Services Line.  PLAINTIFF

PETER H. GARNER was under no contractual provider-insured agreement to

preemptively confirm whether coverage was available under the terms of the family PPO.

However, PLAINTIFF PETER H. GARNER preemptively sought clarification from both

DEFENDANT EXELON Human Resources and from DEFENDANT BLUE CROSS,

both reassuring PLAINTIFF that coverage under their Plan allowed PLAINTIFF

MONICA M. GARNER to undergo consultation and comprehensive, multidisciplinary

treatment at the Wilmot Cancer Institute at the University of Rochester Medical Center in

Rochester, New York as well as a second opinion regarding the histopathology of her

follicular lymphoma at Massachusetts General Hospital in Boston, New York.

60. Due to DEFENDANT EXELON and DEFENDANT BLUE CROSS'S negligence in

failing to provide PLAINTIFFS with the salient Medicare Rules that excluded

PLAINTIFF MONICA M. GARNER'S coverage under the Family PPO Plan,

PLAINTIFFS have suffered devastating financial consequences including the potential

for home foreclosure, loss of savings and other assets including real property, distinct

possibility of bankruptcy and loss of enjoyment of life.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDENTS EXELON
AND BLUE CROSS AND BLUE SHIELD OF ILLINOIS, BREACH OF CONTRACT,
THE PLAINTIFF HEREBY ALLEGE:**

61. As a 36-year dedicated employee of the DEFENDANT EXELON, PLAINTIFF PETER

H. GARNER relied on the Retirement Family Plan PPO for healthcare benefits.  This

retirement benefit was written in the "Comprehensive Retiree Plan Benefit" Packet as

24

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

well as conveyed orally by Human Resources Personnel of DEFENDANT EXELON. Thus, by written and oral contract, PLAINTIFF was informed that he could maintain the same health insurance plan coverage under the Family PPO Plan in retirement as he had while he was employed.  In exchange for this retirement benefit, the PLAINTIFFS paid a monthly premium co-pay for this coverage, which was at an enhanced rate from their co-pay premium while employed.

62. DEFENDANT EXELON was negligent in failing to provide the PLAINTIFFS with comprehensive Medicare exclusionary rules for Retirement Family PPO Plan Coverage. Due to DEFENDANT EXELON'S omission in failing to inform PLAINTIFFS of this exclusionary criteria, DEFENDANT EXELON is in breach of contract for not providing benefits guaranteed in the "Comprehensive Retiree Benefit Plan" Packet.

63. PLAINTIFFS relied on a contract for health care coverage with DEFENDANT BLUE CROSS.  PLAINTIFFS paid monthly premium co-pays for Family PPO Plan Coverage, in exchange for a guarantee of healthcare coverage from the Retirement Family PPO Plan.

64. By continuing to collect monthly premium co-pays from the PLAINTIFFS, then denying healthcare benefits under the Retirement Family PPO Plan, DEFENDANT BLUE CROSS and Blue Shield breached its contractual agreement with the PLAINTIFFS.

65. Both DEFENDANTS had a duty to inform the PLAINTIFFS of the Medicare exclusionary criteria for Retirement Family PPO Coverage. The breach of contract by both DEFENDANTS, has caused the PLAINTIFFS to a deluge of bills from multiple healthcare institutions and providers for enormous amounts of money for which the PLAINTIFFS have no means to pay.

25

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS EXELON
AND BLUE CROSS, BREACH OF DUTY OF GOOD FAILTH AND FAIR DEALING
IN VIOLATION OF ISL § 2601: UNFAIR CLAIMS SETTLEMENT PRACTICES,
THE PLAINTIFFS HEREBY ALLEGE:**

66. A contract based upon a bad faith claim, arises out of the breach of implied provisions in
the policy in violation of ISL § 2601. Under ISL § 2601, the covenant of good faith and
fair dealings requires an insurer to refrain from making an unfounded refusal to pay
policy proceeds, causing an unreasonable delay in making payments, deceiving the
insured and exercising any unfair advantage to pressure an insured into settlement of a
claim.

67. DEFENDANTS EXELON and BLUE CROSS and Blue Shield of Illinois knowingly
misrepresented, by their omission, pertinent facts or policy provisions relating to
coverages at issue. Both DEFENDANTS, by their omission of comprehensive Medicare
Rules precluding coverage for family members receiving SSDI and under the of age 65
under the Retirement Family PPO Plan, constitutes the misrepresentation of a pertinent
fact. Accordingly, both DEFENDANT EXELON as the employer and DEFENDANT
BLUE CROSS as the insurer, have a duty to provide this salient information to its insured
employees who are retiring and changing their healthcare coverage from an employee to
a retiree. DEFENDENTS negligent omission of this critical information, failed to give
notice to PLAINTIFF MONICA M. GARNER that she would need to enroll in a
Medicare Part B Plan for healthcare coverage. This omission by both DEFENDENTS
constitutes mutual mistake of the law, making both DEFENDANTS in breach of the duty
of good faith and fair dealing.

68. Both DEFENDANTS EXELON and BLUE CROSS and Blue Cross of Illinois, upon
notification of PLAINTIFFS' situation, failed to attempt in good faith to effectuate

26

**FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM**

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

prompt, fair and equitable settlements of claims or enter any type of negotiations with the PLAINTIFFS. Instead, both DEFENDANTS have made an unfounded refusal to provide healthcare coverage for PLAINTIFF MONICA M. GARNER'S cancer treatment. DEFENDANTS refusal to provide coverage plus an unreasonable delay in notifying the PLAINTIFFS of their refusal of coverage, has severely compromised the PLAINTIFFS' finances. The PLAINTIFFS are faced with monumental unpaid medical bills, loss of a favorable credit status and threats of credit liens. The PLAINTIFFS are faced into a financially unstable situation with may ultimately be forced into bankruptcy proceedings.

## AS FOR A FOURTH CASE OF ACTION AGAINST DEFENDANT BLUE CROSS, UNJUST ENRICHMENT, THE PLAINTIFFS HEREBY ALLEGE:

69. To recover under a theory of unjust enrichment, a plaintiff must show that (1) the other party was enriched, (2) at that party's expense and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. The essence of an unjust enrichment cause of action is that one party is in possession of money or property that rightly belongs to another. In determining whether this equitable remedy is warranted, a court should look to see if a benefit has been conferred on the defendant under mistake or fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.

70. DEFENDANT BLUE CROSS and Blue Shield of Illinois was in a contractual relationship with DEFENDANT EXELON and the PLAINTIFFS. As such, DEFENDANT BLUE CROSS and Blue Shield of Illinois collected monthly premium payments from both DEFENDANT EXELON and the PLAINTIFFS to pay for the PLAINTIFF'S Retirement Family Plan PPO. By collecting monthly payment premiums

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

from both DEFENDANT EXELON and the PLAINTIFFS, then denying coverage,

DEFENDANT BLUE CROSS was unjustly enriched at both DEFENDANT EXELON'S

and the PLAINTIFFS' expense. By failing to provide health care coverage that

PLAINTIFF MONICA M. GARNER relied upon under the Retirement Family PPO Plan,

DEFENDANT BLUE CROSS is even further enriched by withholding payments to the

third parties providing healthcare to PLAINTIFF MONICA M. GARNER, including the

Wilmot Cancer Center of the University of Rochester Medical Center, Massachusetts

General Hospital, St. Joseph's Hospital in Syracuse, NY and Upstate University Hospital

in Syracuse, NY as well as other health care entities and providers. DEFENDANT

BLUE CROSS and Blue Shield of Illinois denial of coverage while continuing to collect

premiums egregiously violates terms of equity and good conscience.

### AS FOR A FIFTH CAUSE OF ACTION AGAINST BOTH DEFENDANTS, PROMISSORY ESTOPPEL AND BREACH OF CONTRACT AND QUASI CONTRACT, THE PLAINTIFFS HEREBY ALLEGE:

71. The Doctrine of Promissory Estoppel may be involved where it is shown that the

defendant made a clear and unambiguous promise to the Plaintiff, that there was

reasonable and foreseeable reliance on the promise by the Plaintiff and at the injury that

the Plaintiff incurred must be from the same action of the promise.

72. Both DEFENDANTS had written contracts with the PLAINTIFFS to provide retirement

health care coverage under the Retirement Family PPO Plan. The terms of this written

contract provided clear and unambiguous promises to for the PLAINTIFFS. The

PLAINTIFFS reasonably and foreseeably relied on these promises. Additionally,

PLAINTIFF PETER H. GARNER obtained oral confirmations, in essence forming an

implied-in-law contract with both DEFENDANTS when he confirmed their coverage

28

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

benefits for services at the Wilmott Cancer Center at the University of Rochester as well as at Massachusetts General Hospital. The terms of the implied-in-fact contract by formed by both DEFENDANTS clear and unambiguous. The PLAINTIFFS reasonably and foreseeably relied on the DEDENDANTS' promises.

73. The PLAINTIFFS act of confirming coverage with both DEFENDANTS, gave both DEFENDANTS yet another opportunity to investigate the nexus of their guaranteed retirement benefits, the Retirement Family PPO Plan and the Medicare exclusionary rules. The DEFENDANTS failure to properly investigate this nexus, allowed the PLAINTIFFS to reasonably and foreseeably rely on the Family PPO Plan Benefits to their detriment.

74. If the DEFENDANTS had properly investigated the nexus of the guaranteed retirement benefits, the Retirement Family PPO Plan and the exclusionary Medicare Rules at the time of PLAINTIFF PETER H. GARNER'S retirement, PLAINTIFF MONICA M. GARNER would have enrolled in a Medicare Part B Plain. If at the time of PLAINTIFF PETER H. GARNER'S calls to both DEFENDANTS confirming coverage the nexus was properly investigated, PLAINTIFF MONICA M. GARNER could have immediately enrolled in a Part B Medicare Plan and petitioned for 6 months of retroactive benefits, mitigating the PLAINTIFFS' damages.

75. PLAINTIFFS allege that DEFENDANT BLUE CROSS and Blue Shield of Illinois grossly mismanaged the terms of the Family PPO Plan guaranteed by the terms of DEFENDANT EXELON'S retirement benefits. DEFENDANT BLUE CROSS and Blue Shield of Illinois' deficient healthcare plan management, based on the egregious shortcomings in communications that were clearly and unambiguously transmitted to the

29

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

PLAINTIFFS as well third party health care institutions is in violation of the Doctrine of Promissory Estoppel. Both DEFENDANT EXELON'S and DEFENDANT BLUE CROSS' assurance of healthcare coverage for PLAINTIFF MONICA M. GARNER'S cancer care, creates an independent legal duty to pay the amount promised under that state law rule of promissory estoppel. Accordingly, these claims as pleaded concern an independent legal duty that is implicated by the defendants' actions and oral promises which are unrelated to DEFENDANT BLUE CROSS Plan's written terms.

## CAUSATION AND DAMAGES

76. PLAINTIFFS seek restitution and an opportunity to be made whole with a declaratory judgement against DEFENDANTS EXELON and BLUE CROSS and Blue Shield of Illinois, compelling performance contractual benefits justifiably and reasonably relied upon by PLAINTIFF MONICA M. GARNER under the Retirement Family PPO Plan. DEFENDANT EXELON'S negligence in failing to provide proper notification at the time of PLAINTIFF PETER H. GARNER'S retirement regarding the nexus of the guaranteed retirement benefits, the Retirement Family PPO Plan and the exclusionary Medicare terms is against equity and good conscience.

77. PLAINTIFFS also seek a declaratory judgment against DEFENDANTS EXELON AND BLUE CROSS, compelling payment to all the healthcare institutions and provides rendering care to PLAINTIFF MONICA M. GARNER. By giving clear and unambiguous written and oral communications to PLAINTIFFS, that were reasonably and justifiably relied upon, the PLAINTIFFS as well as these third parties were egregiously harmed. As such, both DEFENDANTS must be compelled as a matter of law to make appropriate restitutions.

30

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM

NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067

RECEIVED NYSCEF: 01/18/2021

78. Additionally, PLAINTIFFS seek to recover consequential damages against the DEFENDANTS EXELON and BLUE CROSS above and beyond the policy limits for the astronomical monetary damages incurred by PLAINTIFFS during the course of PLAINTIFF MONICA M. GARNER'S illness and subsequent recovery. Such consequential damages are designed to compensate the PLAINTIFFs for reasonably foreseeable damages which were proximately caused by the contract breach. PLAINTIFFS contend that the purpose of having retirement benefits under the Retirement Family PPO Plan reached beyond the duty to pay for PLAINTIFF MONICA M. GARNER'S cancer care. The contractual benefits also protect the PLAINTIFFS from financially insolvency, protect against adverse credit ratings and prevent punitive financial infractions such as liens, garnishment of wages, pensions, and bankruptcy.

79. PLAINTIFFS have incurred significant legal costs in their attempt to enforce the delivery of their retirement benefits guaranteed by DEFENDANT EXELON and the healthcare benefits guaranteed under DEFENDANT BLUE CROSS and Blue Shield of Illinois' Retirement Family PPO Plan. DEFENDANTS failure to negotiate, forced the PLAINTIFFS to pursue litigation with additional significant costs.

80. PLAINTIFFS beg the Court to compel payment of litigation costs including attorneys' fees for any and all legal expenses caused by the DEFENDANTS. Both DEFENDANTS, individually and jointly have caused substantial financial harm, which without relief of the Court render permanent harm to the PLAINTIFFS.

WHEREFORE, the PLAINTIFFS, hereby demand judgment as against DEFENDANTS in a fair and reasonable amount so as to appropriate compensate PLAINTIFFS for their injuries,

31

FILED: OSWEGO COUNTY CLERK 01/18/2021 05:30 PM
NYSCEF DOC. NO. 1

INDEX NO. EFC-2021-0067
RECEIVED NYSCEF: 01/18/2021

together as with such other and further relief as the Court may deem just and proper, including

the costs and disbursements of this action.

Dated:  January 18, 2020

Yours,

ROBERT F. JULIAN, ESQ.
ROBERT F. JULIAN, P.C.
2037 Genesee St.
Utica, NY 13501
315-797-5610

32